929 F.2d 703
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Ted M. CREWS, Plaintiff/Appellant,
v.
Louis W. SULLIVAN, Secretary of Health and Human Services,
Defendant/Appellee.
 No. 90-2094.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 26, 1991.*
Decided April 3, 1991.
 
 Appeal from the United States District Court for the Southern District of Illinois, East St. Louis Division, No. 89 C 3338, Gerald B. Cohn, Magistrate Judge.
 S.D.Ill.
 AFFIRMED.
 Before BAUER, Chief Judge, CUMMINGS, Circuit Judge and PELL, Senior Circuit Judge.
 
 ORDER
 
 1
 Ted Crews applied for disability insurance benefits on August 26, 1986, alleging an onset of disability since May 10, 1986 due to a back injury. The claim was denied initially, upon reconsideration, and after a hearing before an Administrative Law Judge (ALJ) in Little Rock, Arkansas. The Appeals Council denied Crew's request for review. Crews sought judicial review in the United States District Court for the Eastern District of Arkansas. Because Crews had moved to Illinois, 42 U.S.C. Sec. 405(g) required a change of venue to the District Court for the Southern District of Illinois. The parties consented to an entry of judgment by a United States Magistrate. 28 U.S.C. Sec. 636(c). Both parties moved for summary judgment. On March 27, 1990, the magistrate granted the Secretary's motion for summary judgment, thereby affirming the Secretary's decision. Crews now appeals the magistrate's decision. We affirm.
 
 I. BACKGROUND
 
 2
 At the time of the hearing, Crews was 31 years old and was living with his wife and two minor children. He had a high school General Equivalency Diploma (G.E.D.). He had worked as a diesel mechanic, which frequently required him to lift weights of over 100 pounds. Crews testified that sometime in December 1985 he sustained a work-related injury while assembling motors, but continued to work until May 10, 1986. He has not worked since.
 
 
 3
 Crews testified that he experienced intermittent severe pain in his lower back that radiated down his left leg and ankle. Despite back surgery, he still experienced a high level of pain. He stated that he could not perform his past work because of swelling in his feet from standing or sitting for any period of time. He further testified that he had stopped taking prescribed medication because of side effects and now only took aspirin for pain. He stated that his physical condition had caused him to be depressed and grouchy. He also experienced leg cramps and diarrhea. The activities he was able to perform, albeit with discomfort, were cooking, vacuuming, doing the dishes, driving a truck with an automatic shift, reading, and watching television. Mrs. Crews testified that her husband became easily fatigued while performing household chores, which would increase his pain. Crews' father testified that his son had become emotionally withdrawn.
 
 
 4
 The medical evidence indicates that Crews was treated in December 1985 for lower back pain by Dr. Ballard. In May 1986 he was hospitalized and had a lumbar laminectomy and discectomy. Postoperatively, Dr. Mason, a neurologist, noted that a CT scan, which is a method of examining a body's bone structure, revealed a residual bulge of the L4-5 disc. However, Dr. Mason opined that Crews would probably be capable of returning to work within four weeks. Crews again had back surgery in August 1986. He was healing well postoperatively, but returned to the hospital the day after his release because of acute back pain. Crews received post-operative treatment from Dr. Mason from October to December 1986. Though Crews continued to complain of pain, another CT scan revealed no evidence of any recurrent herniated disc. Dr. Mason opined that the pain was due to residual nerve root edema which should improve during the healing process. Dr. Mason further opined that, though Crews would never be able to return to his former work, he was a good candidate for vocational rehabilitation. Dr. Young, who examined Crews in June 1987, noted no evidence of recurrent disc disease and concluded that Crews would benefit from a progressive exercise program. In July 1987, the assessment of Dr. King was that Crews could not lift over 40 pounds and that he was incapable of repetitive bending and stooping. However, Dr. King noted that Crews could benefit from a retraining program.[1]
 
 
 5
 To determine whether Crews suffered from a disability as defined in the Social Security Act,[2] the ALJ applied the standard five-step sequential analysis. See 20 C.F.R. Secs. 404.1520, 416.920; Veal v. Bowen, 833 F.2d 693, 695 n. 2 (7th Cir.1987). The ALJ found that Crews had not engaged in gainful employment since May 10, 1986. He also found that Crews' impairment was severe, but that disability could not be established under the listings. The ALJ further found that Crews was unable to return to his previous work activity due to the job's requirements of heavy lifting and repetitive bending and stooping. At the fifth step, however, the ALJ, deeming that Crews' subjective complaints of pain were not credible to the extent alleged, found that Crews was capable of doing light work. Because of Crews' age, education, and work experience, the Medical Vocational Guidelines (grid) directed a conclusion that Crews was not disabled, and therefore not entitled to disability benefits. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 202.21 of Table No. 2.
 
 II. ANALYSIS
 
 6
 In reviewing a decision by the Secretary, we must review all of the evidence in the record. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir.1986). Because the Appeals Council found no further basis for review, the ALJ's findings stand as those of the Secretary. Veal, 833 F.2d at 694. Unless the Secretary has committed an error of law, we may not overturn his factual findings as long as they are supported by substantial evidence. Arbogast v. Bowen, 860 F.2d 1400, 1403 (7th Cir.1988). By substantial evidence is meant "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where the evidence is conflicting, the decision of whether a claimant is disabled falls on the Secretary. Walker v. Bowen, 834 F.2d 635, 640 (7th Cir.1987). Although this court may not reweigh the evidence, Stuckey v. Sullivan, 881 F.2d 506, 508 (7th Cir.1989), we may not simply rubber stamp the Secretary's decision without a critical review of the evidence. Veal, 833 F.2d at 696.
 
 
 7
 On appeal to this court, Crews contends that the Secretary's findings were not supported by substantial evidence. He alleges that the Secretary erred: 1) by finding Crews' subjective complaints inadequate; 2) by failing to retain a vocational expert; and 3) by employing the grid.
 
 A. Subjective Complaints of Pain
 
 8
 We give the ALJ's credibility determinations considerable deference. Steward v. Bowen, 858 F.2d 1295, 1302 (7th Cir.1988). Crews maintains that the ALJ's credibility findings regarding his subjective complaints of pain are not supported by substantial evidence. In this Circuit, a subjective complaint of pain that is supported by objective medical evidence may not be discounted. Walker, 834 F.2d at 641. On the other hand, "[a] claimant's statement of symptoms is not sufficient to establish the existence of an impairment." Stuckey, 881 F.2d at 508.
 
 
 9
 Crews contends that the ALJ's findings were "woefully inadequate" because Crews' claim was not evaluated in light of Polaski v. Heckler, 751 F.2d 943 (8th Cir.1984).[3] He notes that his testimony indicated: that he suffered from disequilibrium, diarrhea, rectal bleeding, difficulty in concentrating, depression, nervousness, irritability and nonexertional pain; that the testimony of his wife and father corroborated that he was in pain and unable to perform light work; that the prescribed medication was ineffective and left side-effects; and that his daily activities were restrictive and aggravated his pain and functional limitations. Crews argues that the ALJ did not evaluate all of the evidence before him because he did not comment on either the above, his past work record, the situs of his pain, the assessment of a permanent partial disability of 25% to his body, or his emotional impairments. Crews further contends that Dr. King's medical assessment was evidence of his inability to perform a full range of work. We disagree with Crew's contentions.
 
 
 10
 The record reflects that the ALJ adequately considered Crews' testimony as well as all of the other evidence submitted. The ALJ remarked that Crews was subject to "a certain degree of discomfort," but that the issue was not "the existence of pain, but whether or not the claimant's pain is disabling." The ALJ noted the activities that Crews was able to perform in a restricted manner as well as the fact that Crews does not take any prescribed medication and that the medical evidence did not reveal any significant side-effects. He further noted that none of the observations of third persons, including the physicians, indicated that Crews' pain was of such frequency, intensity or duration to prevent him from performing light work activities. The ALJ found that Crews' subjective complaints of pain and emotional impairments were not substantiated by the record as a whole and therefore deemed them not credible. We find that the ALJ properly determined that Crews had no nonexertional limitations.
 
 B. Vocational Expert
 
 11
 Crews points out that he had met his burden of establishing that he could not return to his former employment activities. At that point, the ALJ determined whether in light of his impairments he could perform light work. Walker, 834 F.2d at 640 (when an individual's impairment precludes the performance of past work, burden shifts to Secretary to show that the claimant can perform jobs available in the national economy). To make this determination, Crews argues that the ALJ was obligated to obtain the services of a vocational expert to determine whether, in light of his exertional and nonexertional limitations, Crews was able to perform unskilled work. We disagree. As noted above, the ALJ determined that Crews did not have any nonexertional limitations. Furthermore, whether to employ the services of a vocational expert is at the discretion of the Secretary. Warmoth v. Bowen, 798 F.2d 1109, 1112 (7th Cir.1986). It is useful to obtain the services of a vocational expert where the record does not supply information concerning a claimant's ability to perform certain kinds of work. Orzel v. Finch, 445 F.2d 150, 154 (7th Cir.1971). That is not the case here. Having found that Crews had no nonexertional limitations, the ALJ was under no obligation to seek the advice of a vocational expert.
 
 C. The Grid
 
 12
 "The grid is a chart which classifies a claimant as disabled or not disabled, based on the claimant's physical capacity, age, education, and work experience." Walker, 834 F.2d at 640. "Where a claimant's characteristics correspond to factors on the grid, the [Medical-Vocational] Guidelines determine disability based on the availability of suitable jobs for the claimant in the national economy." Caldarulo v. Bowen, 857 F.2d 410, 413 (7th Cir.1988). Crews notes that the use of the grid may be inappropriate if the claimant suffers from severe nonexertional impairments that prevent him from performing the work indicated by the grid. Walker, 834 F.2d at 640-41.
 
 
 13
 The question for this Court is whether the application of the grid to Crews' claim is supported by substantial evidence in the record. Caldarulo, 857 F.2d at 413. The ALJ explicitly found that Crews had no nonexertional limitations.[4] The ALJ was not persuaded that Crews' pain was so severe as to be disabling. The ALJ found that Crews has the residual functional capacity to perform physical exertion requirements of work except for heavy lifting and repetitive bending and stooping. The record fully supports this view. Referring to the grid, in light of Crews' residual functional capacity, his age, his education, and his work experience, the ALJ concluded that Crews was not disabled as defined by the Social Security Act. Crews has not established that the Secretary's reliance on the grid was unsupported by substantial evidence.
 
 III. CONCLUSION
 
 14
 There is substantial evidence in the record to support the Secretary's conclusion that Crews does not have a disability as it is defined in the Social Security Act. The order granting summary judgment in favor of the Secretary is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Rule 34(a), Fed.R.App.P.; Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 Dr. King completed a medical assessment 2 weeks after the ALJ's denial of Crews' application for disability benefits. His conclusion at that time was that Crews should not lift more than 15 pounds, that he should not stand for more than 2 hours or sit more than 3 hours, or walk more than 3 hours at a time, and that he should not bend, push, pull, climb, stoop, crouch, crawl, and only occasionally kneel and reach. Those findings, which were more limiting than Dr. King's initial assessment, were before the Appeals Council. The Appeals Council remarked that the changes in Dr. King's assessment were not explained by the medical record
 
 
 [2]
 A disability is the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which has either lasted or can be expected to last for at least 12 months. 42 U.S.C. Sec. 416(1)(1). Unlike the worker's compensation system, there are no awards for degrees of disability under the Social Security Act. Clark v. Sullivan, 891 F.2d 175, 177 (7th Cir.1989)
 
 
 [3]
 This Eighth Circuit case states:
 The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
 1) the claimant's daily activities;
 2) the duration, frequency and intensity of the pain;
 3) precipitating and aggravating factors;
 4) dosage, effectiveness and side effects of medication;
 5) functional restrictions.
 Polaski, 751 F.2d at 948.
 Even under Eighth Circuit law, the ALJ's determination is supported by substantial evidence.
 
 
 [4]
 Even if Crews did have nonexertional limitations, that fact alone would not necessarily preclude the use of the grid. Nonexertional limitations would have to be severe enough "to restrict a full range of gainful employment at the designated level." Nelson v. Secretary of Health and Human Services, 770 F.2d 682, 685 (7th Cir.1985)